UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAKE FOREST ELEMENTARY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-2323** |
| **ORLEANS PARISH SCHOOL BOARD** | **SECTION: "H"(4)** |

## ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 24). For the following reasons, the Motion is DENIED.

## BACKGROUND

Plaintiffs are two non-profit organizations that contracted with the Orleans Parish School Board ("OPSB") to operate a Type 3 public charter schools in the parish. Plaintiff Lake Forest Elementary Charter School Corporation operates Lake Forest Elementary Charter School, and Plaintiff Advocates for Arts-Based Education Corporation operates Lusher Charter School. Plaintiffs allege that the Operating Agreements that they entered into with OPSB in 2011 explicitly guarantee funding in accordance with the

1

Minimum Foundation Program ("MFP") formula adopted by the Louisiana Board of Elementary and Secondary Education ("BESE") and approved by the state legislature ("the Operating Agreement"). In 2015, the Louisiana Legislature adopted Act 467, amending Louisiana Revised Statutes § 17:3995(A)(3)(b) to provide for a district level allocation policy applicable only in Orleans Parish. Plaintiffs allege that the legislature's adoption of Act 467 violates their vested contractual rights to funding in accordance with the state-wide MFP. Plaintiffs contend that their Operating Agreements guarantee them funding pursuant to the MFP. The relevant provision of the Operating Agreement ("the Funding Provision") states as follows:

> For purposes of funding, Charter School shall be considered an approved public school of OPSB, and shall receive a per pupil amount each year from OPSB based on the October first membership count of the School pursuant to La. R.S. 17:3995, except as provided for explicitly in Section 5.7 herein and Section 2.2.2 of Charter School's Facilities Lease with OPSB, and the provisions of the Minimum Foundation Program [MFP] formula adopted by BESE and approved by the State Legislature . . . .

The MFP is the "principal source for funding elementary and secondary education" in Louisiana.[1] MFP funds are allocated by block grants to school boards across the state pursuant to a formula developed by BESE, which takes into account the number of students in each school district and the special characteristics of those children.[2] Historically, public charter schools operating in Orleans Parish were allotted MFP funds on a per capita basis.

---

[1] Doc. 24-1, p. 3.
[2] Louisiana Const. Art 8, § 13.

The newly amended § 17:3995(A)(3)(b), however, mandates OPSB to distribute MFP funds on a differentiated basis, stating that:

> Beginning July 1, 2016, for a district with one or more Type 3B charter schools in a parish that contains a municipality with a population of three hundred thousand or more persons according to the latest federal decennial census, the total amount of minimum foundation program formula funds allocated to the local school board and to Type 1, 1B, 3, 3B, 4, and 5 charter schools that are located within the district shall be allocated using a district-level computation based on student characteristics or needs as determined by the state board. The state Department of Education shall facilitate a collaborative process that includes representatives from the Recovery School District, the Louisiana Association of Public Charter Schools, any affected local school board and any organization representing its authorized charter schools, and advocates for students with disabilities in the development of the district-level allocation policy that shall take effect on July 1, 2016.

Pursuant to this provision, the OPSB developed a "Collaborative Working Group" ("CWG") to develop a funding formula, which takes into account students with special needs, such as special education students, English language learners, over-age students, and gifted or talented students. The funding formula that the CWG recommended assigns a base level per pupil amount for each student in the OPSB and supplements additional funds to those students with identified special needs (the "Differentiated Formula"). After the CWG recommended the Differentiated Formula, the OPSB voted to authorize the Superintendent to distribute the MFP funds. The School Superintendent, Defendant Dr. Henderson Lewis, has announced his intent to implement the Differentiated Formula developed by the CWG. Plaintiffs allege that, over time, the Differentiated Formula will significantly reduce

3

their funding. Plaintiffs contend that the revision to § 17:3995 and the Superintendent's policy will directly and substantially impair their rights under the Operating Agreements. Plaintiffs allege violations of the Contracts, Due Process, and Equal Protection Clauses of the U.S. Constitution. Plaintiffs bring a § 1983 claim against the OPSB and Dr. Henderson Lewis in his official capacity as the New Orleans Superintendent of Schools. The Differentiated Formula is slated to take effect on July 1, 2016. Accordingly, the parties have asked this Court to consider the pending motions on an expedited basis.

Defendants have filed the instant motion, asserting that this Court lacks jurisdiction to hear Plaintiffs' claims. They also argue, among other things, that Plaintiffs have failed to join an indispensable party, that they lack constitutional standing, that venue is improper, and that this Court should abstain from deciding this matter. This Court will address each of Defendants' several arguments in turn.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[3] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed

---

[3] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

facts.[4]  The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[5]

## LAW AND ANALYSIS

### A. Federal Question Jurisdiction

Defendants argue that this Court does not have subject matter jurisdiction over Plaintiffs' claims.  Plaintiffs have alleged federal question jurisdiction pursuant to the contracts clause of the Constitution.  The contracts clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."[6]

> A federal cause of action is stated under the contract clause when one alleges that he or she has a contract with the state, which the state, through its legislative authority, has attempted to impair. Mere refusal to perform a contract by a state does not raise a constitutional issue, but when a state uses its legislative authority to impair a contract a constitutional claim is stated.[7]

Plaintiffs allege that their Operating Agreements create vested contractual rights to receive funding in accordance with the state-wide MFP and that the revision of § 17:3995 interferes with this right.  Defendants argue that Plaintiffs' claim amounts merely to a breach of contract claim and is not a constitutional violation, thereby depriving this Court of federal question jurisdiction.  Defendants cite to cases from other circuits, stating that "so long as governmental action does not foreclose an adequate damages or special

---

[4] *Den Norske Stats Oljesels kap As v. Heere MacVof*, 241 F.3d 420, 424 (5th Cir. 2001).
[5] *See Physicians Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).
[6] U.S. Const., art. 1, § 10.
[7] *E & E Hauling, Inc. v. Forest Pres. Dist. of Du Page Cty., Ill.*, 613 F.2d 675, 678 (7th Cir. 1980); *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1101 (9th Cir. 1999).

performance remedy, a breach does not run afoul of the Contracts Clause."[8] This Court, however, finds Defendants' argument on this point unavailing. In *E&E Hauling Inc. v. Forest Preserve*, the Seventh Circuit explained that if the breaching party is able to assert the law at issue as a defense to a claim for damages, then the law has constitutionally impaired an obligation of the contract.[9] Here, if Plaintiffs sought a breach of contract claim against the OPSB for damages in breaching the Operating Agreements by failing to provide funding pursuant to the MFP, the OPSB could point to its obligation under § 17:3995 to allocate funds using a district-level computation in its defense. "A resort to the use of the law in such a circumstance must be considered to raise a claim under the contract clause."[10] Accordingly, Plaintiffs' Complaint asserts a claim under the contracts clause over which this Court has federal question subject matter jurisdiction.

Having found that subject matter jurisdiction exists over one of Plaintiffs' claims, this Court need not address Defendants' arguments regarding its jurisdiction to hear Plaintiffs' remaining claims.[11] To the extent

---

[8] *Charles v. Baesler*, 910 F.2d 1349, 1356 (6th Cir. 1990); *see TM Park Ave. Associates v. Pataki*, 214 F.3d 344, 349 (2d Cir. 2000) ("If a contract is merely breached and the duty to pay damages remains, then the obligation of the contract remains and there has been no impairment.").

[9] *E & E Hauling, Inc.*, 613 F.2d at 680–81; s*ee Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir. 1996) ("We must ask, therefore, whether Chicago, rather than merely breaking the promise that it made to Horwitz–Matthews, set up a defense that prevented the promisee from obtaining damages, or some equivalent remedy, for the breach.").

[10] *E & E Hauling, Inc.*, 613 F.2d at 680–81.

[11] 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

that those claims do not raise federal questions, this Court shall exercise its supplemental jurisdiction. Defendants' request to dismiss for lack of subject matter jurisdiction is therefore denied.

## B. Constitutional Standing

Next, Defendants argue that Plaintiffs do not have constitutional standing to bring their claims. "It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case."[12] "To have standing to sue, a plaintiff must show that he personally suffered some actual or threatened injury, that the injury is fairly traceable to the defendant's challenged action, and that the relief that plaintiff has requested will redress the injury."[13] "The injury-in-fact must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' and 'the injury must affect the plaintiff in a personal and individual way.'"[14]

Defendants contend that Plaintiffs cannot show an injury in fact in order to prove standing. Plaintiffs have alleged an injury of the loss of millions of dollars over the next several years as a result of the reallocation of funds under the Differentiated Formula. Defendants allege that Plaintiffs' loss is not a concrete injury because the Operating Agreements do not guarantee them funding in accordance with the state-wide MFP. "Put differently, Defendants' implementation of the differentiated funding formula is entirely consistent

---

[12] *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 813 (W.D. La. 2003).
[13] *Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 741 (W.D. Tex. 2007).
[14] *Crane v. Napolitano*, 920 F. Supp. 2d 724, 732 (N.D. Tex. 2013), aff'd sub nom. *Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992), 504 U.S. at 560, 560 n.1).

with the terms of the Operating Agreements, and thus Plaintiffs cannot show a 'particularized' harm *even if* the differentiated funding formula results in lost funding."[15]

Defendants' argument speaks to a fundamental disagreement between the parties regarding how the Court should read the Funding Provision of the Operating Agreements. Specifically, the parties dispute the effect of the "except as provided for explicitly in" clause. Defendants would have this Court read the "except as provided for explicitly in" clause as applying only to the immediately preceding provisions Section 5.7 and Section 2.2.2, which outline amounts owed by the schools to the OPSB. Such an interpretation would result in the relevant portions of the Funding Provision reading that the Plaintiffs "shall receive a per pupil amount each year from OPSB . . . pursuant to La. R.S. § 17:3995 . . . and the provisions of the [MFP]." Defendants argue that the Funding Provision promises allocation in accordance with § 17:3995 and that the Operating Agreements contemplate a legislative change to that provision.[16] Defendants argue that no impairment occurred because the amendments to § 17:3995 in Act 467 are incorporated into the parties' agreement.

Plaintiffs, on the other hand, would have the Court read "except as provided for explicitly in" as also applying to the "provisions of the MFP" clause, such that the Funding Provision would read in pertinent part that the Plaintiffs "shall receive a per pupil amount each year from OPSB . . . pursuant

---

[15] Doc. 24-1, p. 17.
[16] Defendants point to Section 15.7.1 of the Operating Agreements, which declares that the parties intend to be bound by the amendments to any state or federal law referenced in the Agreements. Doc. 24-5, p. 20.

8

to La. R.S. § 17:3995, except as provided for explicitly in . . . the provisions of the [MFP] adopted by BESE and approved by the State Legislature." Plaintiffs argue that such an interpretation guarantees them funding in accordance with the state-wide MFP and that any amendment to their funding would require adoption by BESE and approval by the legislature. They therefore argue that the New Orleans-only application of the amendment to § 17:3995 and the district level adoption of the Differentiated Formula violate the guarantees of their contract.

This dispute speaks to the ultimate merits of the issue before this Court. Defendants seek a ruling that Plaintiffs' interpretation of the Operating Agreements is incorrect and that they therefore cannot show an injury. Such a ruling would dispose of Plaintiffs' claims on the merits. The Fifth Circuit has held that "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."[17] Accordingly, because Defendants' challenge to standing also challenges the existence of Plaintiffs' cause of action, this Court assumes jurisdiction and standing and proceeds to the merits.[18]

---

[17] *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).
[18] *See Worldwide Parking, Inc. v. New Orleans City*, 123 F. App'x 606, 608–09 (5th Cir. 2005) ("The district court's resolution of the factual issue of whether the contract called for mostly professional services precluded federal jurisdiction because it doomed Worldwide's federal claim on the merits. In such a case, the rule of *Bell v. Hood*[,327 U.S. 678, 682 (1946),] requires the district court to assume jurisdiction and decide the case on the merits.").

In addressing Defendants' argument as an attack on the merits, this Court holds that factual disputes prohibit such a decision at this time. Even adopting Defendants' reading of the Funding Provision, the provision is far from unambiguous. The record before this Court is insufficient to make a factual finding as to the meaning of the Funding Provision of the Operating Agreements. Such a dispute is better resolved following discovery and a development of the record.

**C. Sovereign Immunity**

Defendants next allege that Plaintiffs' claims are barred by sovereign immunity. "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well."[19] The State's Eleventh Amendment immunity extends "to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State."[20] Plaintiffs correctly point out that the OPSB is not an arm of the state. "Both the Louisiana courts and the federal district courts in Louisiana have consistently held that school boards are autonomous political subdivisions and not the alter ego of the state from the standpoint of sovereign immunity."[21]

Defendants rebut this argument by citing to the Louisiana Supreme Court in *Rousselle v. Plaquemines Parish School Board*, in which it stated that "[a]s administrators of public education, school boards are agencies of the

---

[19] *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (internal quotation omitted).
[20] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002).
[21] *Moore v. Tangipahoa Par. Sch. Bd.*, 594 F.2d 489, 494 (5th Cir. 1979); *Sch. Bd. of Par. of St. Charles v. Quala Sys., Inc.*, 159 F. Supp. 2d 295, 297 (E.D. La. 2001); *Smith v. Concordia Par. Sch. Bd.*, 387 F. Supp. 887, 891 (W.D. La. 1975).

10

state."[22] This case, however, does not discuss the classification of school boards in regards to sovereign immunity and the Eleventh Amendment. Even if an entity is classified as an agency of the state, it still may not be an arm of the state for Eleventh Amendment purposes.[23] Indeed, the Fifth Circuit has specifically stated that:

> Although Louisiana courts have referred to school boards as "agencies" of the state, this characterization does not amount to an assertion that the boards are arms of the state within the meaning of the eleventh amendment. School boards generate funds for the operation of parish school districts through local ad valorem taxation, exercise a great deal of discretion in performing their functions and addressing their innately local concerns, have authority to sue or be sued in their own name, and can hold, use, or sell property as each local board determines necessary to fulfill its obligation to the public. In view of the inherently local nature of the interests of Louisiana school boards, the wide degree of local autonomy they are granted under state law, and the predominately local source of their funding, it cannot be said either that these entities are mere arms of the state or that monetary judgments against them would represent indirect impositions on the state treasury interfering with the state's fiscal autonomy. Louisiana school boards, therefore, are not entitled to eleventh amendment immunity to Section 1983 claims.[24]

---

[22] 633 So. 2d 1235, 1241 (La. 1994).
[23] *See Vogt*, 294 F.3d at 690 (5th Cir. 2002) (stating that "calling the levee district a 'creature or agency of the state' does not necessarily mean that it is an 'arm of the state' within the meaning of Eleventh Amendment jurisprudence. This point has been made repeatedly in our prior decisions."); *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 939 (5th Cir. 2001) ("In light of our decisions requiring the application of the arm-of-the-state analysis, Kamani's quotation of McCrea's statement that the Port of Houston is a 'creature of state law and a political subdivision of the State of Texas' does not automatically support the conclusion that the Port of Houston Authority is entitled to Eleventh Amendment immunity.").
[24] *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131–32 (5th Cir. 1986).

Accordingly, Defendants are not entitled to sovereign immunity from Plaintiffs' claims and their request for dismissal on this ground is denied.

### D. Waiver of Federal Jurisdiction and Improper Venue

Next, Defendants allege that, pursuant to the Operating Agreements, Plaintiffs have waived federal jurisdiction and venue in this Court. Defendants allege that the forum selection clauses of the Operating Agreements operate to establish an exclusive jurisdiction. The forum selection clauses state that "[t]he parties to this operating agreement irrevocably consent to any suit, action, or proceeding with respect to this operating agreement being brought in the Civil District Court for the Parish of Orleans, State of Louisiana."[25]

The Fifth Circuit has recognized two types of forum selection clauses ("FSC"): mandatory and permissive. "A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. Only mandatory clauses justify transfer or dismissal."[26] In order to be mandatory, a forum selection clause must contain clear language specifying that litigation must occur in the specified forum.[27] "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that

---

[25] Doc. 24-5, p. 21.
[26] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).
[27] *Id.*

12

jurisdiction exclusive."[28]  "[L]anguage merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make an FSC mandatory."[29]

Plaintiffs argue that the forum selection clauses in their Operating Agreements are merely permissive and do not establish an exclusive forum. This Court agrees.  The clauses at issue merely state that the parties "consent" to suit "being brought" in the Civil District Court for the Parish of Orleans. The clauses do not contain clear language establishing that the specified forum is exclusive, as required to establish a mandatory forum selection clause.  "A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another."[30]  Because the forum selection clauses are not mandatory, dismissal on this ground is not warranted.

### E. Failure to Add Indispensable Party

Defendants next argue that the State of Louisiana is an indispensable party to this action who cannot be joined because it is protected by sovereign immunity and that the case therefore must be dismissed because adequate relief cannot be rendered in the State's absence.  "Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry."[31] Federal Rule of Civil Procedure 19(a) governs whether a person should be joined, and Rule 19(b) governs whether the suit should be dismissed if that person cannot be joined.  "If the necessary party cannot be joined

---

[28] *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).
[29] *Weber*, 811 F.3d at 768.
[30] *City of New Orleans*, 376 F.3d at 504.
[31] *Nat'l Cas. Co. v. Gonzalez*, No. 15-10478, 2016 WL 454223, at *2 (5th Cir. Feb. 4, 2016) (internal quotations omitted).

without destroying subject-matter jurisdiction, the court must then determine whether that person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party."[32]  Rule 19(a) requires that a person be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[33]

First, this Court questions how Defendants can in one breath argue that the OPSB is an arm of the state and then also argue that the State is an indispensable party.  As Defendants point out, the Louisiana Supreme Court has held that parish school boards are agencies of the state.[34]  Accordingly, this Court sees no reason why it cannot accord complete relief among the existing parties.  Because OPSB is an agency of the state, its presence in this action is sufficient to protect the interest of the State.  The State's interest will not be impaired or impeded by this litigation, and there is no risk of incurring inconsistent obligations.

Defendants have cited to no case in which the State has been deemed an indispensable party to a claim that a state statute violates the Constitution, nor could this Court find one.  Indeed, "the Fifth Circuit has held that the State

---

[32] *Id.*
[33] *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009).
[34] *Rousselle v. Plaquemines Par. Sch. Bd.*, 633 So. 2d 1235, 1241 (La. 1994).

is not an indispensable party merely because the constitutionality of a state statute is challenged in a lawsuit."[35]  As Plaintiffs argue, "[w]ere the state an 'indispensable party' to such a case, sovereign immunity would preclude a federal forum in every case under Article 1, Section 10."[36]  Accordingly, Defendants' request for dismissal on this ground is denied.

### F. Failure to Engage in Negotiation

Defendants next argue that Plaintiffs' suit should be dismissed because it is premature.  Defendants allege that Plaintiffs failed to comply with the dispute resolution provisions of the Operating Agreements, which require them to notify Defendants of an issue and engage in a good faith effort toward resolution prior to filing suit.[37]

Plaintiffs deny that they failed to comply with the dispute resolution provisions of the Operating Agreements, attaching a letter sent to Defendants prior to the filing of this suit seeking to engage in "consensual resolution" of their issues.[38]  Counsel for Plaintiffs also attests that he met with general counsel for OPSB to discuss resolution.  This Court holds that these acts satisfy Plaintiffs' obligations under the Operating Agreements to engage in pre-litigation dispute resolution.  Accordingly, Defendants' request to dismiss on these grounds is denied.

---

[35] *Thornton v. Foti*, No. CIV.A. 87-4265, 1988 WL 135164, at *2 (E.D. La. Dec. 12, 1988) (citing *Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978)).
[36] Doc. 40, p. 16.
[37] Doc. 24-5, p. 17.
[38] Doc. 40-5, p. 4.

## G. Abstention

Finally, Defendants ask this Court to abstain from deciding the issues in this case under both the *Burford* and *Pullman* doctrines. This Court will address each separately.

### a. *Burford Abstention Doctrine*

The *Burford* abstention doctrine requires that:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[39]

The Fifth Circuit has stated that in deciding whether to exercise *Burford* abstention, the Court should weigh the following factors:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.[40]

Defendants argue that the *Burford* doctrine should apply in this case because Plaintiffs' Complaint challenges the result of a state administrative proceeding—"the differentiated funding formula mandated by the Legislature, recommended by the Collaborative Working Group, and implemented by

---

[39] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989).

[40] *Aransas Project v. Shaw*, 775 F.3d 641, 649 (5th Cir. 2014).

16

Defendants"—and involves difficult questions of state law bearing on public policy issues, such as the allocation of funding for public education.

Plaintiffs rebut that there is no "difficult issue of state law" to be decided in this matter, rather the predominating issues are federal. This Court agrees. Here, Plaintiffs seek a ruling that the amendments to § 17:3995 and the Differentiated Formula suggested by the CWG violate Plaintiffs' constitutional rights. Although public education is certainly an area of local concern, Defendants have not identified any difficult questions with which this Court will be forced to grapple. Defendants contend that "federal review of the question of proper allocation of per pupil funding in school districts across the state would be disruptive of State efforts to establish a coherent policy with respect [to] school funding."[41] This Court has not, however, been asked to decide how the state should allocate funding for education. It has been asked to decide if the fashion in which it chose to allocate funding violates the constitutional rights of Plaintiffs. Abstention is not warranted "when a claim requires the federal court to decide predominating federal issues that do not require resolution of doubtful questions of local law and policy."[42]

Finally, Defendants have not identified a special state forum through which Plaintiffs should seek relief.[43] "*Burford* abstention requires the existence of a state administrative proceeding to which the federal court could

---

[41] Doc. 24-1. p. 21.

[42] *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 315CV00565JWDSCR, 2015 WL 6551836, at *21 (M.D. La. Oct. 29, 2015).

[43] *See Pub. Serv. Co. of New Hampshire v. Patch*, 167 F.3d 15, 24 (1st Cir. 1998) ("The fundamental concern in *Burford* is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution.").

defer."[44] None exists here. Accordingly, the factors weigh against abstention under the *Burford* doctrine.

### b. *Pullman Doctrine*

Defendants next request this Court abstain under the *Pullman* doctrine. The Fifth Circuit has summarized the Supreme Court's holding in *Railroad Comm'n v. Pullman Co.* as follows:

> [F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and "needless friction with state policies . . . ." However, federal courts need not abstain on Pullman grounds when a state statute is not "fairly subject to an interpretation which will render unnecessary" adjudication of the federal constitutional question. Pullman abstention is limited to uncertain questions of state law because "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."[45]

Plaintiffs claim that the amendments to § 17:3995 and the Differentiated Formula violate their vested contractual rights, equal protection rights, and due process rights pursuant to the U.S. and Louisiana Constitution. Plaintiffs also assert one alternative claim, arguing that Defendants' actions are null and void under Louisiana law because neither BESE nor the OPSB has approved the Differentiated Formula. Accordingly, abstention under the Pullman doctrine is inappropriate here. As evidenced by Plaintiffs' Complaint, there is no state law issue that must be resolved before the federal issues can be

---

[44] *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 242 (5th Cir. 1998).
[45] *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (internal quotations omitted).

18

addressed. Regardless of a decision on Plaintiffs' alternative state law claim, this Court would still be required to address Plaintiffs' constitutional claims. That is so because even if the Differentiated Formula was not properly adopted, Plaintiffs still contest the constitutionality of the amendments to § 17:3995 mandating adoption of the formula in the first place. Accordingly, resolution of the state law question before this Court will not make it unnecessary to also resolve the federal questions. The Pullman abstention doctrine is therefore inappropriate in this case, and this Court declines to abstain on these grounds.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is DENIED.

New Orleans, Louisiana this 1st day of June, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

19