UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAKE FOREST ELEMENTARY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-2323** |
| **ORLEANS PARISH SCHOOL BOARD** | **SECTION: "H"(4)** |

### ORDER AND REASONS

Before the Court are Plaintiffs' Motion for Preliminary Injunction (Doc. 63) and Cross-Motions for Partial Summary Judgment (Doc. 73, 83). For the following reasons, Plaintiffs' Motions are DENIED, and Defendants' Motion for Partial Summary Judgment is GRANTED.

### BACKGROUND

Plaintiffs are two non-profit organizations that contracted with the Orleans Parish School Board ("OPSB") to operate Type 3 public charter schools in the parish. Plaintiff Lake Forest Elementary Charter School Corporation operates Lake Forest Elementary Charter School, and Plaintiff Advocates for Arts-Based Education Corporation operates Lusher Charter School. Plaintiffs allege that the Operating Agreements that they entered into with OPSB in 2011 explicitly guarantee funding in accordance with the Minimum Foundation Program ("MFP") formula adopted by the Louisiana Board of

1

Elementary and Secondary Education ("BESE") and approved by the state legislature ("the Operating Agreement"). In 2015, the Louisiana Legislature adopted Act 467, amending Louisiana Revised Statutes § 17:3995(A)(3)(b) to provide for a district level allocation policy applicable only in Orleans Parish. Plaintiffs allege that the legislature's adoption of Act 467 violates their vested contractual rights to funding in accordance with the state-wide MFP. The relevant provision of the Operating Agreement ("the Funding Provision") states as follows:

> For purposes of funding, Charter School shall be considered an approved public school of OPSB, and shall receive a per pupil amount each year from OPSB based on the October first membership count of the School pursuant to La. R.S. 17:3995, except as provided for explicitly in Section 5.7 herein and Section 2.2.2 of Charter School's Facilities Lease with OPSB, and the provisions of the Minimum Foundation Program [MFP] formula adopted by BESE and approved by the State Legislature . . . .

The MFP is the "principal source for funding elementary and secondary education" in Louisiana.[1] MFP funds are allocated by block grants to school systems across the state pursuant to a formula developed by BESE. This formula takes into account the number of students in each school district and the special characteristics of those children.[2] Once a school system receives its MFP allocation from the state, individual charter schools are allocated their share of those funds pursuant to § 17:3995. In the year preceding the legislation at issue here, § 17:3995 required distribution of MFP funds to each charter school in an amount "equal to the per pupil amount provided through the minimum foundation program formula."[3] The newly amended §

---

[1] Doc. 24-1, p. 3.
[2] Louisiana Const. Art. 8, § 13.
[3] La. Rev. Stat. § 17:3995 (amended 2016).

17:3995(A)(3)(b), however, mandates OPSB to distribute MFP funds on a differentiated basis, stating that:

> Beginning July 1, 2016, for a district with one or more Type 3B charter schools in a parish that contains a municipality with a population of three hundred thousand or more persons according to the latest federal decennial census, the total amount of minimum foundation program formula funds allocated to the local school board and to Type 1, 1B, 3, 3B, 4, and 5 charter schools that are located within the district shall be allocated using a district-level computation based on student characteristics or needs as determined by the state board. The state Department of Education shall facilitate a collaborative process that includes representatives from the Recovery School District, the Louisiana Association of Public Charter Schools, any affected local school board and any organization representing its authorized charter schools, and advocates for students with disabilities in the development of the district-level allocation policy that shall take effect on July 1, 2016.

Pursuant to this provision, the OPSB formed a "Collaborative Working Group" ("CWG") to develop a funding formula that takes into account students with special needs, such as special education students, English language learners, over-age students, and gifted or talented students. The CWG recommended a funding formula that assigns a base level per pupil amount for each student in the OPSB and supplements additional funds to those students with identified special needs (the "Differentiated Formula"). After the CWG recommended the Differentiated Formula, the OPSB voted to authorize the Superintendent to distribute the MFP funds. The School Superintendent, Defendant Dr. Henderson Lewis, has implemented the Differentiated Formula developed by the CWG, and the OPSB has adopted a resolution approving of that implementation.

Plaintiffs allege that, over time, the Differentiated Formula will significantly reduce their funding and eliminate their ability to predict funding

and plan a budget for future years. They also argue that the new formula attempts to impermissibly "shift the burden of increased special needs funding onto Plaintiffs by diverting their contractually guaranteed minimum funding to other schools, substantially impairing Plaintiffs' contracts in violation of Article I, Section 10 of the U.S. Constitution."[4]

Subsequent to the filing of this action, the legislature adopted an additional, relevant amendment to § 17:3995. Act 91, effective July 2017, amends § 17:3995 to give the OPSB the power to adopt a differentiated formula, adding the following language:

> (b) The local school board shall adopt a policy that establishes a process to determine the district-level funding allocation to be effective beginning July 1, 2017, and as revised in subsequent years as appropriate, based upon student characteristics or needs to distribute the total amount of minimum foundation program formula funds allocated to the local school board and to Type 1, 1B, 3, 3B, 4, and 5 charter schools that are located within the geographic boundaries of the local school system.[5]

In light of Act 91, then, the Differentiated Formula adopted in 2016 is only in effect for the 2016–2017 school year, and therefore 2016–2017 is the only year relevant for purposes of this matter.

Plaintiffs allege violations of the Contracts, Due Process, and Equal Protection Clauses of the U.S. Constitution. Plaintiffs bring a § 1983 claim against the OPSB and Dr. Henderson Lewis in his official capacity as the New Orleans Superintendent of Schools. Plaintiffs now seek a preliminary injunction enjoining Defendants from continuing to impair their vested contractual rights. In addition, the parties have filed cross-motions, asking this Court to determine whether BESE has fulfilled its responsibility in

---

[4] Doc. 114, p. 1.
[5] 2016 La. Sess. Law Serv. Act 91 (S.B. 432).

adopting the Differentiated Formula pursuant to Act 467. This Court will address each motion in turn.

## LEGAL STANDARD

### A. Preliminary Injunction

An applicant for preliminary injunctive relief must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not granted; (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest.[6] A preliminary injunction is an extraordinary remedy.[7] Accordingly, a preliminary injunction should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[8] In the end, a preliminary injunction is treated as an exception rather than the rule.[9]

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11]

---

[6] *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003).
[7] *Miss. Power & Light Co. v. United Gas Pipe Line*, Co., 760 F.2d 618, 621 (5th Cir. 1985).
[8] *Id.*
[9] *St. of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).
[10] Fed. R. Civ. P. 56(c) (2012).
[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[12] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[13] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[14] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[15] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[16] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[17]

## LAW AND ANALYSIS

### A. Preliminary Injunction

As previously outlined, an applicant for preliminary injunctive relief must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not

---

[12] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).
[13] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[15] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[16] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[17] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

granted; (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest.[18]  The party seeking the injunction must clearly carry the burden of persuasion on all four requirements.[19]  After a review of the briefing and a two-day injunction hearing, this Court finds that Plaintiffs cannot carry their burden to prove at least two of the requirements of a preliminary injunction.

    i.    <u>Irreparable Harm</u>

Plaintiffs have failed to show that they will suffer irreparable harm if a preliminary injunction is not granted.  In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages.[20]  Plaintiffs allege that they will suffer irreparable harm in the form of (1) uncertainty as to their funding levels from year to year, (2) relegation to successive lawsuits to enforce the contract, (3) continuing violation of constitutional rights through the impairment of the contract, (4) depletion of operating reserves, and (5) the potential recollection of funds from other schools required if Plaintiffs succeed on their claims.

Plaintiffs have failed to prove facts to support their first two arguments for irreparable harm.  First, it was revealed at the hearing that, in light of Act 91, the Differentiated Formula is applicable only for the 2016–2017 school year.  This Court should not, therefore, consider any changes that may take place to the funding of schools under Act 91 or thereafter. Plaintiffs have estimated the 2016–2017 year combined loss at $754,000.  They cannot therefore claim that they will suffer the harm of uncertainty as to their funding this year.  Relatedly, Plaintiffs also claim they will be harmed because they

---

[18] *Lake Charles Diesel, Inc.* 328 F.3d at 195–96.
[19] *Id.*
[20] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

will be required to bring successive lawsuits every year the funding formula is changed. While this may be true, an injunction would not remedy this concern. Only the effects of Act 467 are before this Court, and an injunction would affect only its implementation. Regardless of this Court's ruling on the limited issue before it, Plaintiffs will still need to bring an action regarding Act 91 to the extent that they challenge its validity.

Third, Plaintiffs assert that they will suffer irreparable harm by the continued violation of their constitutional rights through Act 467's impairment of their contracts with the OPSB. They allege that violations of constitutional rights constitute irreparable harm as a matter of law. This Court has previously rejected such an argument in a contracts clause case.[21] Plaintiffs have not pointed this Court to any binding precedent in which a violation of the contracts clause is alone sufficient to constitute irreparable harm. Typically, such a rule is confined only to First and Fourth Amendment violations.[22] Accordingly, this Court declines to apply such a broad rule here.

Fourth, Plaintiffs complain that they will suffer irreparable harm by the depletion of their operating reserves. Such a harm can clearly be remedied by money damages and therefore is not a basis for a preliminary injunction.

Finally, Plaintiffs argue that irreparable harm will result if Defendants are allowed to commence funding to the charter schools in the parish and *then* judgment is entered in Plaintiffs' favor. Plaintiffs argue that in such a scenario, Defendants would be forced to reclaim overpayments made to some schools in order to redistribute those funds. Such a harm is too speculative to

---

[21] *Petroplex Int'l v. St. James Par.*, No. 15-140, 2016 WL 2594808, at *5 (E.D. La. May 5, 2016).
[22] *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012); *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. V. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

support a preliminary injunction.[23] Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction."[24] For all of the foregoing reasons, Plaintiffs have not carried their burden to show irreparable harm.

    ii.    Likelihood of Success

This Court likewise finds that Plaintiffs have not carried their burden to show a likelihood of success on the merits. Plaintiffs allege that they have established a substantial likelihood of success on their impairment of contract claim. The contracts clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."[25] Plaintiffs allege that their Operating Agreements created vested contractual rights to receive funding in accordance with the state-wide MFP and that Act 467's revision to § 17:3995 interferes with this right.

The contracts clause imposes limits on the power of the state to abridge existing contractual relationships even in the exercise of legitimate police power.[26] This limitation does not, however, obliterate the police power of the states.[27] In determining whether there has been a constitutional impairment, a court must conduct a two-part inquiry. First, the Court must assess whether the state law has operated as a substantial impairment of the contractual relationship.[28] If the impairment is minimal, the inquiry may end here. If the court finds a severe impairment, however, it must then conduct a careful examination of the nature and purpose of the legislation.[29] That is, the scope

---

[23] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient.").
[24] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).
[25] U.S. Const., art. 1, § 10.
[26] *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 23 (1977).
[27] *Id.*
[28] *Id.* at 21.
[29] *Id.*

of the impairment sets the height of the hurdle that the state must clear for legislation to pass constitutional muster.[30]

Therefore, this Court must first consider whether Act 467 has operated as a substantial impairment on the Operating Agreements between Plaintiffs and the OPSB. In consideration of this question, background information regarding the MFP is helpful. Article 8, section 13 of the Louisiana Constitution provides in pertinent part that:

> The State Board of Elementary and Secondary Education . . . shall annually develop and adopt a formula which shall be used to determine the cost of a minimum foundation program of education in all public elementary and secondary schools as well as to equitably allocate the funds to parish and city school systems. Such formula shall provide for a contribution by every city and parish school system . . . . The legislature shall annually appropriate funds sufficient to fully fund the current cost to the state of such a program as determined by applying the approved formula in order to insure a minimum foundation of education in all public elementary and secondary schools . . . . The funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation.

The clear wording of this constitutional provision provides that BESE shall develop a formula that determines the minimum cost of education in each school system. This formula is used to equitably allocate funds set aside for education by the state, as well as contributions from each school system. MFP allocations are administered by block grant to each local school system for their management.

The Orleans Parish School System, however, is unlike any other school system in the state. Following the devastation of Hurricane Katrina, the state "handed over the majority of Orleans Parish public schools to the state

---

[30] *Id.*

Recovery School District" ("RSD").[31] The RSD turned to a charter school model as a means of opening several schools in a short period of time.[32] There are now more than 70 charter schools in New Orleans, which serve 92% of the city's students in the RSD and OPSB.[33] By contrast, there are only 69 charter schools spread throughout the rest of the state.[34] The charter system established in Orleans Parish is unique amongst the traditional school systems elsewhere in the state.

With that backdrop in mind, in 2015 the legislature adopted Act 467, amending Louisiana Revised Statutes § 17:3995 to allow for a New Orleans-only Differentiated Funding Formula. Plaintiffs contend that the 2015 amendment to § 17:3995 impairs their rights under their Operating Agreements with the OPSB. The Funding Provision of their Operating Agreements state in pertinent part that:

> For purposes of funding, Charter School shall be considered an approved public school of OPSB, and shall receive a per pupil amount each year from OPSB based on the October first membership count of the School pursuant to La. R.S. 17:3995, except as provided for explicitly in Section 5.7 herein and Section 2.2.2 of Charter School's Facilities Lease with OPSB, and the provisions of the Minimum Foundation Program [MFP] formula adopted by BESE and approved by the State Legislature . . . .

Plaintiffs contend that this provision guarantees, at a minimum, funding equal to the per pupil calculation for the MFP. Plaintiffs argue that "except as provided for explicitly in" applies to the "provisions of the MFP" clause, and as a result, the Funding Provision provides in pertinent part that the Plaintiffs "shall receive a per pupil amount each year from OPSB . . . pursuant to La.

---

[31] LA. DEP'T OF EDUC. ANN. REP. 9 (2016).
[32] Karen Rowley, Ph. D., *Charter Schools in Louisiana: What Lessons Do They Have to Offer the Education Community?*, 324 PARS OF LA. 1 (March 2010).
[33] LA. DEP'T OF EDUC. ANN. REP. 9 (2016).
[34] LA. DEP'T OF EDUC. ANN. REP. 4 (2016).

11

R.S. § 17:3995, except as provided for explicitly in . . . the provisions of the [MFP] adopted by BESE and approved by the State Legislature." Plaintiffs argue that such an interpretation guarantees them funding in accordance with the state-wide MFP. They argue that Act 467 allows OPSB to fund their schools below this explicit protection and therefore impairs their contractual rights.

Defendants, on the other hand, argue that the "except as provided for explicitly in" clause applies only to the immediately following provisions Section 5.7 and Section 2.2.2, which outline amounts owed by the schools to the OPSB. Such an interpretation would result in the relevant portions of the Funding Provision reading that the Plaintiffs "shall receive a per pupil amount each year from OPSB . . . pursuant to La. R.S. § 17:3995 . . . and the provisions of the [MFP]." Defendants argue that the Funding Provision promises allocation in accordance with § 17:3995 and that the Operating Agreements contemplate a legislative change to that provision.[35] Defendants argue that no impairment occurred because the amendments to § 17:3995 in Act 467 are incorporated into the parties' agreement.

In interpreting the meaning of the Funding Provision, this Court turns to the rules of contractual interpretation. Both Operating Agreements expressly invoke Louisiana law. "According to the Louisiana Civil Code, '[i]nterpretation of a contract is the determination of the common intent of the parties.'"[36] In probing this intent, a court looks first to the four corners of the contract.[37] "When the words of a contract are clear and explicit and lead to no

---

[35] Defendants point to Section 15.7.1 of the Operating Agreements, which declares that the parties intend to be bound by the amendments to any state or federal law referenced in the Agreements.

[36] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting La. Civ. Code art. 2045).

[37] *See John Paul Saprir, LLC v. Yum! Brands, Inc.*, 106 So. 3d 646, 652 (La. App. 4 Cir. 2012) (citation omitted).

absurd consequences, no further interpretation may be made in search of the parties' intent."[38]  "Each provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective."[39]  "When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties."[40]  "The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[41]

With the rules of contract interpretation in mind, this Court has considered the construction of the Funding Provision at issue.  It is clear to this Court that Defendants' reading of the provision prevails.  According to the well-established rules of English composition, the "except as provided for explicitly in" clause is a non-defining relative clause.  A non-defining relative clause is one that is set-off by commas and adds detail to the sentence; however, if it is removed, the overall meaning of the sentence remains the same.  The clause, therefore, merely modifies the immediately preceding terms but does not apply to the "provisions of the MFP" as Plaintiffs suggest.  If Plaintiffs' reading of the clause were to prevail, an additional comma would need to be added following "Section 5.7 herein," making the "except as provided for" clause applicable to all three of the items listed thereafter.  Even Plaintiffs'

---

[38] La. Civ. Code art. 2046.
[39] *Lis v. Hamilton*, 652 So. 3d 1327, 1330 (La. 1995) (citations omitted).
[40] *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013).
[41] *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007).

13

witness and the drafter of the clause, James Brown, admitted that they "would have done better to have had separate commas next to each concept."[42]

Moreover, Plaintiffs' interpretation of the Funding Provision runs counter to the intent of the parties. The evidence at the preliminary injunction hearing revealed that during negotiations, OPSB provided to Plaintiffs the identical language for the Funding Provision now at issue. The insertion of the non-defining relative clause was the culmination of negotiations unrelated to the MFP or funding. Lusher requested the addition of the clause because of concerns regarding the school board's ability to withhold funds for payment of administrative fees.[43] The clause reflected the parties' compromise that the school board would only withhold funds from its distribution to Lusher in accordance with Section 5.7 of the Operating Agreement (discussing alternative school fees) or Section 2.2.2 of the Lease Agreement (discussing use fees).[44] It is clear that the intent of the parties regarding the addition of this language was that Lusher was to be paid in accordance with § 17:3995, and the OPSB could deduct certain amounts due as provided in the two listed sections. Plaintiffs argue, however, that the addition of the "except as" clause in its current position created *three* exceptions to funding pursuant to § 17:3995—Section 5.7, Section 2.2.2, *and* the MFP. Mr. Brown testified, however, that there was no discussion between himself and the OPSB regarding the MFP as an additional exception.

Indeed, on multiple occasions Lusher attempted to insert explicit guaranteed funding language into its Operating Agreement. Mr. Brown testified that he proposed the addition of the following language that would have guaranteed funding on a by heads basis: "The per pupil amount provided

---

[42] Transcript, Doc. 110, p. 225.
[43] Transcript, Doc. 110, p. 178.
[44] Transcript, Doc. 110, p. 179, 222.

14

to the Charter School shall be computed annually and shall be equal to no less than the per pupil amount received by the OPSB based on the October first membership count."[45] Mr. Brown testified that the OPSB would not agree to the inclusion of this provision, stating that, "They said, you know, that the statute [§ 17:3995] says what it says, and the statute could be amended. So they didn't want to put that in."[46]

In addition, Lusher made several attempts to narrow Section 15.7.1 of the Operating Agreement, which states that "where this Operating Agreement references federal or state laws, state regulations and OPSB policy, they be bound by any amendments to such laws, regulations and policies upon the effective date of such amendments."[47] The OPSB summarily declined all of Plaintiffs' efforts to narrow this section or add language such as "if not inconsistent with the terms and conditions of this Agreement."[48] OPSB remained firm that funding should be in accordance with § 17:3995 and that the statute should be subject to revisions that could affect Lusher's contract.

In light of the history of contract negotiations that took place with respect to the Funding Provision, it is obvious to this Court that there was no mutual intent of the parties to guarantee Plaintiffs funding in accordance with the MFP. The unequivocal testimony revealed that the OPSB refused to agree to the addition of language guaranteeing any level of funding and instead maintained that Lusher would be funded in accordance with § 17:3995 and any amendments that may be made thereto. Even assuming that the Plaintiffs believe their Operating Agreements provided for such, certainly the OPSB did not share this intent or understanding. Accordingly, in light of the plain

---

[45] Transcript, Doc. 110, p. 174; Plaintiffs' Exhibit 27A.
[46] Transcript, Doc. 110, p. 175.
[47] Doc. 73-2, p. 26; *see* Transcript, Doc. 110, p. 226 (admitting to attempting to change section 15.7.1 "about six times or so in the negotiation").
[48] Transcript, Doc. 110, p. 176; Plaintiffs' Exhibit 27D.

15

language of the provision and lack of common intent, Plaintiffs' reading of the Funding Provision is unlikely to prevail. This Court therefore finds it unlikely that Plaintiffs will succeed in proving that Act 467 substantially impairs the Operating Agreements. Having failed to carry their burden to prove two of the elements required to obtain a preliminary injunction, this Court denies Plaintiffs' request for such relief.

### B. Cross-Motions for Summary Judgment

Next, Plaintiffs have filed a motion for partial summary judgment seeking a judgment that the Differentiated Formula utilized by the OPSB is a nullity. Plaintiffs argue that the Differentiated Formula has not been adopted by BESE, as required by Act 467. Defendants, on the other hand, argue in their cross-summary judgment motion that Act 467 merely requires BESE to adopt student characteristics to be used in deciding on a formula, as it has done, and therefore the formula is not a nullity.

Act 467 states in relevant part:

> . . . the total amount of minimum foundation program formula funds . . . shall be allocated using a district-level computation based on student characteristics or needs *as determined by the state board*. The state Department of Education shall facilitate a collaborative process that includes representatives from the Recovery School District, the Louisiana Association of Public Charter Schools, any affected local school board and any organization representing its authorized charter schools, and advocates for students with disabilities in the development of the district-level allocation policy that shall take effect on July 1, 2016.

The issue then is whether the phrase "as determined by the state board" modifies "district-level computation based on student characteristics or needs" or modifies only "student characteristics or needs." Both parties vehemently contend that the statute is clear and unambiguous, but neither agree on its

16

meaning.[49] This Court believes that the statute is indeed ambiguous as to BESE's role in the adoption of a district-level formula. In addition, there is no case law and sparse legislative history discussing newly enacted Act 467. Accordingly, this Court is presented with a first impression issue of state statutory interpretation regarding the state's education system. In light of this, Defendants have moved, in the alternative, for dismissal of Plaintiffs' nullity claim so that it may be decided in the first instance by a Louisiana court.

The Fifth Circuit has held that in determining whether to relinquish jurisdiction over pendent state law claims, a court should "look to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity."[50] 28 U.S.C. § 1367(c) permits this Court to decline to exercise supplemental jurisdiction over a state law claim if it presents novel or complex issues of state law. The question presented to this Court by Plaintiffs' state law nullity claim requires statutory interpretation of a newly enacted statute. Such a determination is one of first impression, with little guiding resources, weighing significantly on the state's education funding scheme. As both parties have pointed out, "[f]unding schools and avoiding the dissipation of state assets are classic police functions."[51] Accordingly, this Court holds that it is appropriate to decline to exercise jurisdiction over Plaintiffs' state law nullity claim because it presents a novel and complex issue of state law.[52]

---

[49] Doc. 83, p. 11; Doc. 73, p. 7.
[50] *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158–59 (5th Cir. 2011).
[51] *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 511 (5th Cir. 2001).
[52] *See Poisso v. Formosa Plastics Grp.*, 994 F. Supp. 743 (M.D. La. 1998).

In addition, such a decision is in line with "judicial economy, convenience, fairness, and comity."[53] This Court has not yet devoted significant resources to Plaintiffs' state law claims; therefore, refusal to exercise jurisdiction would not result in duplicative efforts. In addition, "comity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and not as well equipped for determinations of state law as are state courts."[54] For these reasons, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law nullity claim and dismisses such without prejudice so that it may be raised in state court in the first instance.[55]

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Preliminary Injunction is DENIED, Plaintiffs' Partial Motion for Summary Judgment is DENIED, and Defendant's Partial Motion for Summary Judgment is GRANTED. Plaintiffs' state law nullity claim is DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana this 27th day of September, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[53] *Enochs*, 641 F.3d at 160; *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 343 (1988).

[54] *Enochs*, 641 F.3d at 160 (internal quotations omitted).

[55] "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).